(93 South. 373)

### HOWISON v. NICHOLSON. (2 Div. 252.)

(Court of Appeals of Alabama. April 11, 1922. Rehearing Denied May 9, 1922.)

**1. Principal and agent ⬤➡123(4)—Evidence held to show plantation manager's authority to employ physician for plantation tenants.**

In suit on account for medical services rendered and medicine furnished to plantation tenants of defendant, contracted for by the plantation superintendent, evidence of the custom on the plantation for the superintendent to so contract held to show his authority to do so.

---

⬤➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
[1] Ante, p. 101.

**2. Principal and agent ⊜☞116(1)—Person, relying on apparent authority indicated by custom, not bound by private limitations on agent's authority.**

If physician, furnishing medical attention to defendant's plantation laborers under contract with defendant's plantation superintendent, relied on a custom that had prevailed on the plantation for some years for the superintendent to make such contracts, it was immaterial that defendant had forbidden his superintendent to employ medical services.

**3. Principal and agent ⊜☞100(6) — Superintendent of plantation has authority to do things necessary to the business.**

A superintendent or general manager of a plantation has authority to do those things which are necessary and proper to be done in carrying out the business in its usual and accustomed way, and which the principal could and would do in like cases, if present.

**4. Principal and agent ⊜☞160½ — Pecuniary benefit to agent from contract did not invalidate it as to innocent third party.**

In suit on account for medical services rendered and medicine furnished to plantation tenants of defendant, contracted for by the plantation superintendent, held, that the fact that the superintendent benefited financially from the contract with plaintiff, unknown to defendant, did not invalidate the contract as respects defendant.

**5. Appeal and error ⊜☞1011(1)—Conclusion of trial judge, not plainly contrary to weight of evidence, not to be disturbed.**

Where a case was tried by the judge without a jury, and, while the evidence conflicted, the trial court's conclusion was not plainly and palpably contrary to the weight of evidence, his judgment would not be disturbed.

Appeal from Circuit Court, Bibb County; S. F. Hobbs, Judge.

Assumpsit by Cooper Nicholson against Allen P. Howison. Judgment for plaintiff, and defendant appeals. Affirmed.

Lavender & Thompson, of Centerville, for appellant.

A third party, dealing with an agent, is put on his guard to ascertain the agent's authority. 9 Port. 210; 21 Ala. 317; 24 Ala. 455; 90 Ala. 505, 8 South. 101; 81 N. C. 5; 24 Fla. 64, 3 South. 821; 87 Ill. 179. Under the testimony, all orders involving the payment of money were subject to confirmation by appellant. 205 Ala. 484, 88 South. 590. By retaining a percentage of the fees to be paid, the plaintiff and the agent were guilty of a wrong as against the appellant. 16 Ala. 28; 68 Ala. 206; 89 Ala. 452, 7 South. 760; 14 Ala. App. 433, 70 South. 293; 85 Ala. 158, 4 South. 635; 96 Ala. 439, 11 South. 370; 22 Ga. App. 431, 96 S. E. 232.

On application for rehearing, counsel criticized the authority cited by appellee, but they cite no authority in addition to those cited above.

Jerome T. Fuller and Frank Head, both of Centerville, for appellee.

The reasons assigned by counsel for appellant do not suggest that the judgment should be disturbed. 174 Ala. 430, 56 South. 968; 135 Ala. 628, 33 South. 832; 104 Ala. 176, 16 South. 46. There is no question but that Helton had authority to employ the appellee. 2 C. J. 560, 586, 608; 6 Ala. App. 155, 60 South. 436; 80 Ala. 528, 1 South. 340; 68 Fla. 282, 67 South. 90; 16 Ala. App. 486, 79 South. 160. Ratification does not have to be expressed in words, but may be implied from acts and conduct. 68 Ala. 239; 64 Ala. 1, 38 Am. Rep. 1; 11 Ala. 105; 10 Ala. 755, 44 Am. Dec. 505.

MERRITT, J. The appellee brought suit on an account, for medical services rendered and medicine furnished during the year 1920 to the tenants of appellant, and recovered a judgment. There was no denial of the fact that the services were rendered, and medicine and drugs furnished, and that the account was true and correct. The question, and the only question, is the liability of the appellant. One Helton testified that he was general superintendent, and had full and complete control of appellant's farm for the year 1920; that there were about 30 families engaged in farming on this farm; that appellant lived about 20 miles from the farm, and had not visited it for more than 2 years; that Helton had general supervision and control of the farm, and that it was a part of his duties to look after the stock and laborers, make provision for the stock and laborers, and to look after the health of the laborers and make provision therefor; that during the spring of the year 1920 he made a contract with the appellee, whereby he was to do the practice for the hands on the plantation, and that during the year he did render medical services and make professional visits to the tenants on the farm; that there was considerable sickness among the hands on the farm during the year; that nothing was said between appellant and Helton about medical attention for the hands on the farm at the time he was employed as superintendent; that appellant knew nothing about the agreement between Helton and appellee, whereby appellee was to do the practice on the farm; and that no statement of the account was sent appellant until the fall of the year.

There was testimony tending to show that Helton had authority to, and did, buy some supplies for the farm, which accounts were made without direct authority from appellant, but that the accounts were paid by appellant. The plaintiff testified that the only contract he had for the services per-

---

⊜☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

formed and medicine furnished was with appellant's superintendent, Helton; that it was the custom on appellant's farm, and had been for several years, for the superintendent or general manager to employ a physician for the laborers, and to see that the hands on the farm had medical attention, and this custom was known to him when he contracted with Helton; that it was the custom of appellant to pay whatever physician rendered the medical services under orders from the superintendent, the latter part of the year; he (appellant) had always paid his father, who is a doctor, when he did the practice on the farm, in years past; that he knew, at the time he traded with Helton, that he (Helton) was buying supplies for the farm, purchasing what he needed, and the goods were being charged to appellant, and he paid for them. One Cleveland, a witness for appellee, testified that he was general superintendent of the farm for the year 1919 and part of the year 1918; that he had no instructions as to the employment of a physician; that, as was the custom on the farm, he had entire control, management, and supervision in the operation and management of the farm; that the hands on the farm had to have medical attention and medicine to keep them fit for work, and as general manager, as was the custom there, he employed a physician when one was needed, and at the end of the year the physician would send in his bill, and it was sent to appellant, and it was paid; that the general manager had the duty to look after the health of the hands and their families on the farm.

The appellant's witness Freeman testified that he was superintendent of this farm a part of the year 1918; that there was no agreement between him and appellant relative to medical attention for the hands on the farm; that the rule on the plantation was that, unless hands cleared enough money above what it took to pay their plantation account, the appellant did not pay their medical bills; that every doctor's bill that was made while he was manager was paid by appellant. Another witness, bookkeeper for appellant, testified that the bills for medical attention to the hands on the plantation were paid by appellant only in case they made more than the amount of their account with appellant.

The appellant testified that he did not employ the defendant to visit professionally or furnish medicine for his tenants at any time, or authorize any one to do this for him; that Helton, his superintendent, did not have authority to employ appellee in any way; that Helton, as superintendent, had no authority to make any contract that would bind him without first submitting such for his approval, and that the only way that he paid for medical attention to any of his hands was in case they had money due them in the fall of the year, after they had settled their indebtedness with him; that he was not indebted to any of the parties named in the account which was the foundation of the suit, as all of them came out in debt.

On this statement of facts, the judge, trying the case without a jury, we think, was warranted in rendering a judgment for appellee.

[1-3] From the testimony of the appellee, it is clear that Helton, as general manager or superintendent to look after and make provision for the health of the laborers, was not only following the custom on the plantation, but was well within his authority as a general superintendent, in contracting with appellee to give medical attention to appellant's laborers.

"An agent with power to conduct a particular line of business has authority * * * to do whatever is necessary or proper and usual in the ordinary course of such business." Dothan Grocery Co. v. Pilcher, 200 Ala. 151, 75 South. 899; Simpson & Harper v. Harris, 174 Ala. 430, 56 South. 968.

Appellee, as a third party, was no doubt relying upon a custom that had prevailed, according to his and a former superintendent's testimony, on this plantation for some years, and it matters nothing if appellant did forbid employment for medical services, except in the manner indicated by his testimony. He could have no private agreement with his agent, which would prevail, if appellee knew nothing of it and relied on such a custom. A superintendent or general manager of a plantation has authority to do those things which are necessary and proper to be done in carrying out the business in its usual and accustomed way, and which the principal could and would do in like cases, if present. The question of the authority of the agent must depend, so far as it involves the rights of innocent third persons who had relied thereon, upon the character bestowed, and not upon the instructions given, or, in other words, the principal is bound to third persons who have relied thereon in good faith and in ignorance of any limitations or restrictions by the apparent authority he has given the agent, and not by the actual or express authority, where that differs from the apparent.

"It is fundamental in the law of agency that the power of every agent to bind his principal rests upon the authority conferred upon him by that principal, and this authority as to third persons consists of the powers authoritatively conferred, those incidental to or implied from the main powers conferred, those which custom and usage have added to the main powers, and those which the principal has caused, or by a previous cause of dealing with the agent to believe that the principal has conferred." Corpus Juris, vol. 2, p. 560.

[4] Serious insistence is made on the part of counsel for appellant that, as Helton, the superintendent, benefited financially on account of the contract with appellee, which was unknown to appellant, on this account the contract was not binding on appellant. The fact, if it be a fact, that Helton profited by such an agreement with appellee, cannot, in the light of his authority to make the contract, be any reason for casting it aside, nor any reason for questioning the good faith of appellee in making the contract with Helton. This is not a suit by Helton against appellant, where a fiduciary relationship existed, in which event the cases cited by appellant's counsel would be apt.

[5] This case was tried by the judge without a jury. It clearly appears that, while the evidence was in conflict, there was sufficient evidence to support the judgment rendered by the court. The trial court had the advantage of seeing and hearing the witnesses, and, the conclusion reached not being plainly or palpably contrary to the weight of the evidence, it will not be disturbed. Hackett v. Cash, 196 Ala. 403, 72 South. 52; Robinson v. State, 15 Ala. App. 29, 72 South. 592.

The judgment of the circuit court is therefore affirmed.

Affirmed.